UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-80421-BLOOM/Reid

CYNTHIA GREEN-ANDERSON,

    Petitioner,

v.

MARK S. INCH,

    Respondent.
_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** is before the Court upon *pro se* Petitioner Cynthia Green-Anderson's ("Petitioner") Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus, attacking her conviction for conspiracy to commit first degree murder in case number 2008-CF-011256-AMB from the Circuit Court for the Fifteenth Judicial Circuit in Palm Beach County, Florida. ECF No. [7] ("Petition"). The Court issued an Order to Show Cause requiring that Respondent Mark S. Inch ("Respondent") file a response to the Petition, ECF No. [8], which Respondent timely filed, ECF No. [10] ("Response"). Petitioner further filed a reply, ECF No. [15] ("Reply"). The Court has carefully reviewed the Petition, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Petition is denied.

### I.  BACKGROUND

#### A.  Procedural History

Petitioner was charged with attempted first-degree murder with a firearm (Count I), conspiracy to commit first degree murder with a firearm (Count II), and being a felon in possession

of a firearm (Count III). ECF No. [11-1] at 2-4. A jury found her guilty of Count II. *Id*. at 6-8. Petitioner later entered a plea of guilty to Count III. *Id*. at 11. After the court adjudicated her guilty, it imposed a sentence twenty years for Count II and a concurrent five years sentence for Count III. *Id*. at 13-17. Petitioner appealed. *Id*. at 19-20. The state appellate court affirmed the Petitioner's conviction and sentence in a *per curiam* opinion. *Id*. at 133. The court denied Petitioner's motion for rehearing. *Id*. at 135-47.

Petitioner then sought post-conviction relief in the state trial court pursuant to Florida Rule of Criminal Procedure 3.850.[1] *Id*. at 159-265. She raised twenty-two claims of ineffective assistance of counsel. *Id*. Of relevance to the instant proceeding, Petitioner argued that counsel was ineffective for (1) misadvising Petitioner not to testify in her own defense; (2) agreeing to play only redacted versions of phone conversations between Petitioner and her husband; and (3) failing to present evidence of the victim's prior violent history and domestic violence injunctions. *Id*. The State filed a response to the motions. *Id*. at 267-300; ECF No. [11-2] at 1-4. The state trial court adopted the reasoning of the State's response and denied the relief without an evidentiary hearing. ECF No. [11-5] at 216-17. The appellate court affirmed the denial. ECF No. [11-6] at 58. The Mandate issued on May 11, 2018. *Id*. at 60.[2]

Petitioner filed this § 2254 petition on October 27, 2017. ECF No. [1]. She raises seven claims of ineffective assistance of counsel.

---

[1] Petitioner filed multiple motions and amendments; those pleadings presented twenty-two claims for relief. Petitioner also a moved for mitigation of her sentence. ECF No. [11-1] at 149-155. The trial court denied the motion. *Id*. at 157.

[2] During the pendency of the motion to vacate, Petitioner filed a petition for writ of habeas corpus in the state appellate court raising three claims of ineffective assistance of appellate counsel. [*Id*. at 62-71]. The petition was denied. ECF No. [11-7] at 3. During the pendency of the motion to vacate, Petitioner filed a motion to correct an illegal sentence. *Id*. at 5-8. The motion was denied. *Id*. at 10-11. The denial was affirmed on appeal. *Id*. at 26. Neither of these proceedings is relevant to the instant habeas petition.

### B.  Underlying Facts

The victim, Jerry Logan, testified that he met Petitioner and her husband in 2005. ECF No. [12-3] at 89. He and Petitioner eventually developed an intimate relationship and began living together. *Id.* at 91. According to the victim, the relationship had its ups and downs. *Id.* at 92. She sometimes called the police on him and he was arrested. *Id.* At some point, she obtained a restraining order against the victim. *Id.* at 94. The relationship lasted for three years and ended when the victim went to jail in 2007. *Id.* at 93. The victim relocated to Port Charlotte, Florida, but returned eight months later. *Id.* at 95.

Despite the restraining order, Petitioner asked the victim to come to her house to pick up some mail. *Id.* at 97. The two renewed their intimate relationship. *Id.* at 98. About a week later, the victim learned that Petitioner was married when she showed him a DVD of her wedding. *Id.* They continued the relationship in spite of her being married. *Id.* at 99. The victim spent many nights at Petitioner's home. *Id.* He would eat there and kept his clothes at her house. *Id.* at 100. Petitioner told the victim that her husband was working in Georgia. *Id.* When her husbanded called, she would tell the victim to be quiet. *Id.* The victim believed that Petitioner intended to leave her husband. *Id.* at 102.

On one occasion when the husband called, the victim answered the phone and told the husband that he was the reason his wife would not come visit. *Id.* at 106. Petitioner became upset, so the victim left. *Id.* at 107. Petitioner called the police who arrested the victim for violating the restraining order. *Id.* at 108.

At some point later, Petitioner came to pick up the victim. *Id.* at 109. She said she called the police because the victim had answered the phone. *Id.* The victim and Petitioner continued

seeing each other. *Id.* at 110. Petitioner would sometimes pick up the victim and other times she would invite him over. *Id.* at 111-12.

On the Wednesday before the shooting, Petitioner picked up the victim. *Id.* at 115. He stayed the night and she drove him back home the next morning. *Id.* at 116. Petitioner did not mention that her husband was getting out of jail. *Id*. at 117. She asked the victim to call her later that evening. *Id.* at 118. When he called later that day, Petitioner did not answer. *Id.* When he finally contacted her Friday night, she sounded hysterical on the phone. *Id*. at 124. Petitioner told the victim that her husband was out of jail on a furlough. *Id.* at 125.

Later that night, the husband called Petitioner's house while she was on the phone with the victim. *Id.* at 126. It was clear from what the husband was saying that he knew that Petitioner and the victim had been together. *Id.* at 127. The victim advised Petitioner to call the police. *Id.* at 128. She said that she would call him back after she called the police. *Id.* He waited for her call, but eventually he called her back. *Id.* at 129. He tried many times to reach her, but she did not answer. *Id.* He finally contacted her, at which time she asked him to come by her house the next day to watch her dogs because she had to go to Miami, Florida. *Id.* at 132. She told the victim she would leave a key on the back porch and $20.00 so he could get cigarettes and beer until she got back. *Id.* at 133.

The victim went to the house twice the next day. *Id.* at 136. The first time he had to leave because the gate was locked, and he could not reach Petitioner to have someone open the gate for him. *Id.* at 136-37. After speaking to Petitioner, he returned with three others. *Id.* at 138. Upon arriving, he jumped over the locked gate and passed through a second gate. *Id.* at 139. He went to the back of the house but did not find the key or money. *Id.* at 140.

4

As he came from the back of the house, the victim encountered Petitioner's husband who was wearing latex gloves and holding a handgun. *Id.* at 142, 147. As the victim turned to run, the husband shot him in the leg. *Id.* at 147. Petitioner then approached the victim and the husband gave the gun to Petitioner and told her to finish killing him. *Id.* at 148-49. Petitioner proceeded to shoot the victim several times until the gun jammed. *Id.* at 149. When the gun jammed, the victim crawled to Petitioner to try to retrieve the gun from her. *Id.* Petitioner was able to fire the gun again, striking the victim in the foot. *Id.* at 151. Ultimately, the victim was shot a total of seven times. *Id.* at 151.

Tiwan Butts and two others traveled in a truck with the victim on the second trip to Petitioner's house. ECF No. [12-4] at 143-46. Butts watched as the victim jumped the gate and went to the back of the house as if looking for something. *Id.* at 146-48. Butts then saw Petitioner's husband pointing a gun at the truck. *Id.* at 149-50. The husband then moved toward the victim and started shooting. *Id.* at 151. Butts heard the victim scream and the driver of the truck pulled away from the area. *Id.* at 151-52. Just before the truck pulled away, Butts saw the husband hand a pair of blue gloves and the gun to someone. *Id.* at 156. The husband got in a car and drove away. *Id.* at 158-59.

On cross-examination, Petitioner's attorney asked Butts if he had heard Petitioner's husband say to her, "finish killing him," or something to that end. *Id.* at 174. Butts responded that he had not heard the husband say that. *Id.* On re-direct, the prosecutor asked Butts what he heard when the husband was shooting. *Id.* at 186. Butts responded that he heard the first gunshot and then heard a statement like, "Bitch, didn't I tell you was going to get you." *Id.*

The victim's sister, Delilah Logan, testified that although her brother was supposed to stay away from Petitioner, they continued to see each other. ECF No. [12-5] at 11-12.

Deputy Edward Mayo was the first police officer on the scene after the shooting. *Id*. at 77. He saw the victim on the ground with four gunshot wounds. *Id*. at 78. As he was providing aid, the victim told him that he had been called to the house by Petitioner and upon his arrival had been shot by Petitioner's husband. *Id*. at 84-85.

Two recordings of Petitioner on phone calls from jail to her husband were played at trial. *Id*. at 192-99. The first recording captured a phone call when the victim answered the husband's call to Petitioner. *Id*. at 192-93. The second recording was a phone call between Petitioner and her husband in which the husband is heard threatening to harm the victim. *Id*. at 193-99. The tape ends with the husband saying, "I would have felt better if you would have trapped him while I was there." *Id*. at 199.

The defense presented several witnesses who testified that the victim had a reputation as a violent person in the community. ECF No. [12-6] at 7-65.

Petitioner did not testify at trial. The trial judge advised Petitioner that it was her decision whether or not to testify and that she could testify over the objection of counsel. *Id*. at 82. When asked if she wanted to testify, Petitioner responded, "No." *Id*. at 83.

## II. LEGAL STANDARD

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the state court. 28 U.S.C. §§ 2254(d)(1), (2); *see Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Fugate v. Head*, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in United States Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams*, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state court decision. *Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002) (citing *Williams*, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and it need not even be aware of the Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y, Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. *Id*. Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

More recently, the United States Supreme Court in *Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018), concluded there is a "look through" presumption in federal habeas corpus law, as silence implies consent. *See also Kernan v. Hinojosa*, 136 S. Ct. 1603, 1605-1606 (2016) (*per curiam*) (adopting the presumption that silence implies consent but refusing to impose an irrebuttable presumption). Where the state court's adjudication on the merits of a claim is unaccompanied by an explanation, the Supreme Court instructs that:

> the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

*Wilson*, 138 S. Ct. at 1192. In other words, if the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id*. However, if the relevant state-court decision on the merits is not accompanied by a reasoned opinion, because it was summarily affirmed or denied, a federal court "should 'look through' the unexplained decision to the last state-court decision that does provide a relevant rationale." *Id.*

The presumption, however, may be rebutted by showing the state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds briefed or argued to the higher court or obvious in the record. *See id*. at 1192, 1196. "Where there are convincing grounds to believe the silent record had a different basis for its decision than the analysis followed by the previous court, the federal habeas court is free, as we have said, to find to the contrary." *Id*. at 1197.

Moreover, the Supreme Court repeatedly has held that "[t]he petitioner carries the burden of proof" and that the § 2254(d)(1) standard is a high hurdle to overcome. *See Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)); *Cullen v. Pinholster*, 563 U.S. 170, 180 131 (2011) (acknowledging that § 2254(d) places a difficult burden of proof on the petitioner); *Renico v. Lett*, 559 U.S. 766, 777 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (Section 2254(d) "demands that state-court decisions be given the benefit of the doubt."); *see also*

*Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017) (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error).

Thus, state court decisions are afforded a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily—without an accompanying statement of reasons. *See Richter*, 560 U.S. at 96-100 (concluding that the summary nature of a state court's decision does not lessen the deference that it is due); *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011) (acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference (citing *Richter*, 560 U.S. at 100-101; *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002))). Because the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court, *Burt v. Titlow*, 571 U.S. 12, 19 (2013), federal courts can "grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fair-minded jurists could disagree,'" *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016). This standard is "meant to be" a "difficult" one to meet. *Harrington*, 562 U.S. at 102.

Here, all of Petitioner's substantive claims contend that counsel was ineffective. The Supreme Court clearly established the law governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a criminal defendant to show that: (1) counsel's performance was deficient; and (2) the deficiency prejudiced the petitioner. *Id*. at 690. As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. *See id.* The judiciary's scrutiny of counsel's performance is highly deferential. *See id*. at 689. As to the second prong, a defendant establishes prejudice by

showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. *See id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *See id.* A defendant must satisfy both the deficiency and prejudice prongs set forth in *Strickland* to obtain relief on an ineffective assistance of counsel claim. Failure to establish either prong is fatal and makes it unnecessary to consider the other. *Strickland*, 466 U.S. at 697.

If a petitioner's claim of ineffectiveness turns on whether counsel should have raised issues of state law, § 2254(d) requires the federal court defer to the state court's decision regarding its own laws. *See Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superseded by statute on other grounds). It is "a fundamental principle state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *See Herring v. Sec'y, Dept. of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Combining AEDPA's habeas standard and *Strickland*'s two-pronged test provide the relevant inquiry in this case. To obtain habeas relief, a petitioner must show the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner" when it rejected his claims of ineffective assistance of counsel. *Bell v. Cone*, 535 U.S. 685, 699 (2002).

**III. DISCUSSION**

In the instant case, Petitioner has raised seven claims of ineffective assistance of counsel. However, in her Reply, Petitioner has stated that she no longer wishes to pursue the merits of Claims Four and Six. Likewise, as will be discussed below, Claims Two and Three are procedurally defaulted, which Petitioner concedes.

### A. Statute of Limitations and Exhaustion

The Court first addresses the issue of timeliness and exhaustion. The State properly acknowledges that the Petition was timely filed. However, the State argues that Petitioner's second and third claims are procedurally barred because these claims were not exhausted in state court. ECF No. [10] at 16-22. As noted above, Petitioner's Reply concedes that these two claims were not properly exhausted. ECF No. [15].

A federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §§ 2254(b), (c). A claim must be presented to the highest court of the state to satisfy the exhaustion requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Richardson v. Procunier*, 762 F.2d 429, 430 (5th Cir. 1985).[3] In a Florida non-capital case, this means the applicant must have presented his claims in a district court of appeal. *See Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995). The claims must be presented in state court in a procedurally correct manner. *Id.*

Because Petitioner concedes that her second and third claims were not raised in the appeal of the denial of her motion for post-conviction relief, they are procedurally defaulted. *See Hall v. State*, 823 So. 2d 757, 763 (Fla. 2002) (an issue not raised in an initial brief is deemed abandoned) (citation omitted); *Baker v. Dep't of Corr., Sec'y*, 634 F. App'x 689, 692 (11th Cir. 2015) (petitioner failed to exhaust substantive double jeopardy claim because he did not raise the claim during his appeal from the denial of his Rule 3.850 motion). Petitioner's failure to raise these claims on the appeal from the denial of her Rule 3.850 motion deprived the state courts of a full opportunity to address the claims. *See O'Sullivan*, 526 U.S. at 845. Moreover, Petitioner has not

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit issued prior to October 1, 1981.

presented any argument to excuse her procedural default. Therefore, these two claims are dismissed as procedurally barred.

### B. Petitioner's Substantive Claims

In light of Petitioner's concessions, only three claims remain for consideration on the merits. In particular, Petitioner argues that counsel was ineffective for (1) failing to call Petitioner to testify at trial; (2) agreeing to play a redacted version of telephone conversations between Petitioner and her husband rather than the entire recording of the conversations; and (3) failing to present evidence of the violent behavior of the victim and the physical abuse inflicted upon her by the victim. Each of these claims was raised in Petitioner's motion for post-conviction relief. The state court adopted the State's reasoning in its order denying these claims. Therefore, in discussing the claims, the Court relies on the reasoning of the State as the findings of the state court. The State's reasoning applied the *Strickland* standard in analyzing the merits of Petitioner's claims. Thus, the question before this Court is whether the state court properly applied *Strickland* based on reasonable factual findings when it denied Petitioner's claims.

### 1. Failure to Call Petitioner to Testify

In her first claim, Petitioner contends that counsel was ineffective for failing to have her testify in her own defense. She alleges that she discussed her desire to testify and believed that her testimony was necessary to present all the facts. According to Petitioner, counsel advised her that her testimony was not needed because the law was on her side and he would not allow her to testify. Despite her insistence, counsel refused to call her to testify.

The state court adopted the State's reasoning in denying this claim. In its response, the State argued that Petitioner could not establish that counsel was ineffective for advising Petitioner not to testify. The State first noted that the record established that Petitioner's waiver of her right

12

to testify was voluntary. The State recounted the colloquy of Petitioner during which the state court asked whether she wished to testify. ECF No. [11-1] at 275. The State also argued that even if Petitioner had testified there was no reasonable probability that her testimony would have altered the outcome at trial. *Id.* at 275-76.

The state court's finding that Petitioner's claim was refuted by the colloquy was not unreasonable. Petitioner was questioned about her decision not to testify. ECF No. [12-6] at 82-83. The court specifically advised her it was a "decision that you get to make over your attorney's objection; if you want to testify, I'm going to let you testify." *Id.* at 82. After being so advised, Petitioner told the court she did not want to testify. Thus, it was not unreasonable for the state court to make a factual finding that this claim was refuted by the record.

Additionally, the state court's finding that Petitioner's testimony was not reasonably likely to alter the outcome of trial was reasonable. As recounted above, the victim testified that Petitioner lured him to her home. He was told that no one would be there, and that Petitioner had left the keys and some money in the back of the house. A witness corroborated that the victim went to the back of the house as if he was looking for something. The victim testified that he was unarmed and that, when he encountered the Petitioner's husband, he was wearing gloves and holding a handgun. The witness also corroborated this testimony. The victim and the witness both testified that the husband went toward the victim and began firing. The victim was unarmed and attempted to flee but was shot as he turned around. The husband then gave the gun to Petitioner and told her to finish killing him. The husband then fled the scene as Petitioner shot at the victim.

All of this evidence overwhelmingly established that Petitioner and her husband had lured the victim to the house with the intention of killing him. The state court's factual findings were reasonable and its finding that there was no reasonable probability that the outcome would have

been different was not contrary to, or an unreasonable application of, *Strickland*'s prejudice prong. As such, this claim is denied.

### 2. Redacted Phone Recordings

Petitioner next argues that trial counsel was ineffective for agreeing that only the redacted versions of her conversations with her husband be admitted. She claims that the jury only heard her husband speaking to the victim and did not hear her screaming in the background for her husband's help. She contends that if the jury had heard the entire recording it would have established that both she and her husband were in fear of their lives.

This claim, in a different form, was presented in the Petitioner's motion for post-conviction relief. Petitioner argued in state court that the tape was improperly admitted. ECF No. [11-1] at 237-39. She also argued that counsel was ineffective for failing to object that only the redacted portion of the tape was admitted. *Id*. She contended that the redaction constituted a *Brady*[4] violation. *Id*. The state court denied the claim finding that Petitioner had failed to specify the content of the missing portion of the recorded call or that the alleged missing portions would have been admissible. *Id.* at 296. The court also found that the State had provided the entire recording to the defense. *Id*.

This claim must be denied as the state court's ruling was based on reasonable factual findings and was not contrary to, or an unreasonable application of, controlling Supreme Court precedent. Petitioner does not dispute that the State provided the entire recording of the conversation. In her Reply, she admits that the entire tape was played at a pretrial hearing. ECF No. [15] at 7. Because the recording was not suppressed, any claim of a *Brady* violation is without merit.

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1983) (holding that the State's suppression of potentially exculpatory evidence is a violation of the Due Process Clause of the Fourteenth Amendment).

Furthermore, the state court's finding that Petitioner was not prejudiced was reasonable. Petitioner sought to have the entire tape played and contended that the entire conversation would establish that she was afraid of the victim and that her husband was merely acting as any loving husband would. However, the evidence at trial established that Petitioner had invited the victim to her home and that her husband ambushed the unarmed victim when he arrived. This was not a case of self-defense, and evidence of Petitioner's fear would not have been relevant to the conspiracy charge for which she was convicted. Even if counsel had introduced the entire tape and established Petitioner's fear of the victim, it is not reasonably likely that the outcome of the trial would have been different.

Therefore, because the state court's denial of this claim was based on reasonable factual findings and was not contrary to, or an unreasonable application of, controlling Supreme Court precedent, this claim is denied.

### 3. Failure to Introduce Evidence of Victim's Violent Behavior

In her final claim, Petitioner argues that counsel was ineffective for failing to present evidence of the victim's violent behavior toward her. She contends that counsel should have presented the facts that had been used to procure the domestic violence injunction against the victim to establish her fear of the victim. According to Petitioner, counsel advised that the evidence could only be introduced if she testified.

This claim was raised in the motion for post-conviction relief. ECF No. [11-1] at 256-60. In state court, however, Petitioner argued generally that counsel had failed to attack the victim's credibility or establish his violent reputation in the community. *Id*. The state court denied the claim finding that the record established that counsel had "forcefully attacked" the character of the victim. ECF No. [2] at 1. In support of this finding it was noted that counsel established the victim

15

was a convicted felon and called six witnesses who testified that the victim had a reputation in the community for being violent. *Id*. The court also found that particular instances of misconduct would not have been admissible under § 90.610, Florida Statutes, which only authorizes impeachment with prior convictions. *Id*. Finally, the state court noted that counsel emphasized the victim's character in closing argument. *Id*. The court ultimately found that Petitioner had failed to establish that counsel was ineffective.

Under these facts, the state court properly applied *Strickland* to find that Petitioner had not established that counsel's performance was deficient. As expressed by the state court, counsel attacked the victim's credibility, established that he had violated the domestic violence injunction, and showed that he had a reputation in the community for violence. However, even after that extensive impeachment, the jury nevertheless found that Petitioner had conspired to kill the victim. As discussed, the evidence established that Petitioner lured the victim to her home where her husband ambushed him. The circumstances show that neither Petitioner nor her husband were acting in self-defense, and any further evidence of the victim's violent nature was unlikely to alter the outcome at trial. The state court's finding that counsel's performance was not deficient and that Petitioner was not prejudiced was not contrary to, or an unreasonable application of, *Strickland*. As such, this claim is denied.

### C. Certificate of Appealability

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed,

even if the court issues a certificate of appealability. Rules Governing § 2254 Proceedings, Rule 11(b), 28 U.S.C. foll. § 2254.

After review of the record, Petitioner is not entitled to a certificate of appealability. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues she seeks to raise. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *see also Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised in the instant action are clearly without merit, Petitioner cannot satisfy the *Slack* test. Therefore, no certificate of appealability shall issue.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition, **ECF No. [7]**, is **DENIED**.
2. No Certificate of Appealability issue.
3. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.
4. The Clerk of Court is directed to **CLOSE** the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 21, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

17

Case No. 19-cv-80421-BLOOM/Reid

Copies to:

Counsel of Record

Cynthia Green-Anderson
W43169
Hernando Correctional Institution
Inmate Mail/Parcels
16415 Spring Hill Drive
Brooksville, FL 34604

Melanie Dale Surber
Attorney General Office
1515 N Flagler Drive
9th Floor
West Palm Beach, FL 33401-3432
Email: crimappwpb@myfloridalegal.com